## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLORIA J. THOMPSON,                    :
                                       :
                   **Plaintiff**       :
                                       :
                                       :
           v.                          :       Civ. No. 1:09-CV-2558
                                       :
KEYSTONE HUMAN SERVICES               :       (Sylvia H. Rambo)
CORPORATION,                           :
                                       :
                   **Defendant**       :
                                       :

## M E M O R A N D U M

Before the court is Defendant Keystone Human Services Corporation's ("Keystone") motion to dismiss (Doc. 23) Plaintiff's second amended complaint. For the reasons that follow, the motion will be granted.

I.        <u>Background</u>

    A.        <u>Facts</u>[1]

On April 18, 2011, Plaintiff filed her second amended complaint (doc. 22) alleging violations of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Age Discrimination in Employment Act, *as amended*, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Americans with Disabilities Act,

---

[1] As required when considering a motion to dismiss, all well-pleaded factual allegations in the complaint will be taken as true.

42 U.S.C. § 12111 *et seq.* ("ADA"); and the Pennsylvania Human Relations Act, 42 Pa.C.S.A § 951 *et seq.* ("PHRA").[2]

Plaintiff, Gloria Thompson, is a forty-nine year old black female who resides in Dauphin County, Pennsylvania. (Compl. ¶ 1.)  At all times relevant to this complaint, Plaintiff worked for Defendant as a rehabilitation specialist and/or personal care associate.[3]  Specifically, Plaintiff started working for Keystone on July 27, 1998, as a rehabilitation specialist. (*Id.* ¶ 5.)  In September, 2002, she was transferred to the position of personal care associate. (*Id.* ¶ 6.)

On July 8, 2003,[4] Plaintiff called in sick due to a stomach aneurism and chronic asthma issues. (*Id.* ¶ 7.)  Plaintiff claims she "was disparately and racially harassed by Tracy Robinson, (Causasian) Assistant Supervisor, perceiving Plaintiff as handicapped required that Plaintiff come in to work or find coverage which was not the standard practice or protocol of Defendant and was not how Defendant treated non-minority employees.  Also, the Defendants' [sic] agents failed to reasonably accommodate her condition." (*Id.*)  In addition, it is alleged that Tracy Robinson threatened to fire Plaintiff on this day if she did not find someone to cover

---

[2]Although Plaintiff makes mention of the Family Medical Leave Act, she does not list this as a separate claim in her complaint.

[3]Defendant claims the complaint should be dismissed because Plaintiff named Keystone Community Mental Health Services in her state administrative actions and not Keystone Human Services Corporation, and thus, Defendant was never put on notice that this action was being initiated. There is some confusion surrounding Defendant's actual name, and whether this name has morphed over the years.  However, Defendant does not contend, and the record does not show, that Defendant was not aware Plaintiff had filed administrative actions against it.  In fact, Defendant has properly defended itself to this point.  Therefore, the complaint will not be dismissed on this basis.

[4]There are inconsistencies in the complaint regarding whether these events took place on June 8, 2003, or July 8, 2003.  However, resolution of this issue is not pertinent for purposes of deciding the instant motion to dismiss.

her shift, Plaintiff claims non-minority employees were not subject to such a threat. (*Id.* ¶ 8.)  This same day, Matt McGeorge, Defendant's Director, called Plaintiff to tell her he supported Tracey Robinson's decision and that it was consistent with company policy.  (*Id.* ¶ 9.)  However, Plaintiff claims there is no official, written company policy in effect.  (*Id.*)

On July 5, 2004, Plaintiff again became ill with a stomach aneurism and chronic asthma, as a result, Plaintiff called Defendant's pager.  (*Id.* ¶ 11.) Unfortunately, Defendant's pager was not properly working, however, Plaintiff was able to eventually contact Amy Hurst, an assistant supervisor.  Plaintiff requested Defendant obtain medical assistance for her and coverage for the residents under her supervision.  (*Id.* ¶¶ 12, 13.)  Hurst informed Plaintiff she was not allowed to leave until coverage had been obtained for the residents.  Plaintiff claims non-minority employees were not treated this same way and that this was not the written practice or procedure of Defendant.  (*Id.* ¶ 14.)  Plaintiff claims that instead of Hurst helping Plaintiff, Hurst instead told Plaintiff to start contacting other employees to see if she could obtain coverage for the facility's residents.  (Doc. ¶ 15.)

Plaintiff alleges that as she attempted to comply with Hurst's requirement that she obtain residential coverage before leaving, Plaintiff became disoriented and semi-conscious.  (*Id.* ¶ 16.)  Eventually, Plaintiff's husband arrived at the facility and called an ambulance for Plaintiff.  (*Id.* ¶ 17.)  By the time the ambulance was ready to take Plaintiff to the hospital, no member of Defendant's staff had showed up to watch the facility's residents, therefore, Plaintiff's husband remained at the facility to watch the approximately ten disabled adult mental health patients onsite.  (*Id.* ¶ 19.)  Eventually Plaintiff's husband found a phone number for

Matt McGeorge, Director of Keystone, who was apprised of the situation and eventually arrived at the facility so Plaintiff's husband could leave.  (*Id.*)

Following this incident, on September 1, 2004, Plaintiff filed a complaint with the Commonwealth of Pennsylvania Board of Health based on Defendant's treatment of her on July 5, 2004.  (*Id.* ¶ 20.)  In addition, it is alleged that Defendant was cited by the Commonwealth of Pennsylvania Board of Health based on Plaintiff's husband being alone on the premises and responsible for the residents within.  Defendant was also cited for failing to ensure that Plaintiff was up to date on her CPR certification.  (*Id.* ¶ 21.)  With regard to the CPR training, in October 2006, Defendant was once again inspected and was notified that within seven days all employee files would need to be updated.  (*Id.* ¶ 42.)  At this time, Plaintiff's certification was due to expire on October 22, 2006, however, Defendant did not inform Plaintiff of her CPR's expiration and instead continued to let her work.  (*Id.* ¶ 43.)  Plaintiff claims that Defendant failed to make sure that Plaintiff was timely certified, while at the same time, making sure that non-minority employees were certified.  (*Id.* ¶ 22.)

In July 2005, Plaintiff requested time off under the Family Medical Leave Act ("FMLA").  (*Id.* ¶ 29.)  Plaintiff was told by Supervisor Pan Berkins that Plaintiff did not have any time available, although Plaintiff contends her pay-stub reflected ample time.  (*Id.*)  Later, Director McGeorge and Supervisor Berkins met with Plaintiff and informed her that she only had two weeks of annual leave available and if she did not return to work in two weeks, she could be terminated.  (*Id.*)  Other management personnel also supported this decision.  (*Id.* ¶33.)  Plaintiff contends that McGeorge's and Berkin's information was incorrect and that non-minority

4

employees were not subject to termination for requesting time off in the same fashion.  Furthermore, Plaintiff contends that her inability to use her earned leave time was a violation of the FMLA.  (*Id.* ¶¶ 31, 34.)  Eventually, Plaintiff declined to put in for leave time and instead continued working her assigned shift.  (*Id.* ¶ 35.)  Plaintiff claims she was later told this was a mistake but continued to remain unable to use her leave time.  (*Id.* ¶ 37.)

Another medically-related incident involving Plaintiff occurred on November 27, 2006.  (*Id.* ¶ 44.)  On this date, Plaintiff alleges she was called into an unscheduled meeting by her program director and program administrator, Bobbi Olson and Laura Kuchta, both caucasian.  She was told the meeting would be held in the facilities basement.  Plaintiff related that she was not feeling well due to a rotator cuff injury, bursa tear and chronic inflammation of the shoulder.  (*Id.*)  During the meeting, Plaintiff received a written warning from Olson and Kuchta which caused her to become more ill, and when she attempted to stand up, both Olson and Kutcha started yelling at her.  (*Id.* ¶ 46.)  The complaint alleges that as Olson and Kutcha were "yelling at her to leave" Plaintiff lost consciousness.  (*Id.* ¶ 48.)  She remained unconscious for an extended period of time, with no medical assistance, until her husband arrived at the facility.  (*Id.* ¶ 49.)  Plaintiff was taken to the hospital by her family while her husband remained at the facility until he could get Plaintiff's shift covered.  (*Id.* ¶ 50.)  Plaintiff claims that non-minority employees who fell ill were not treated this same way, nor was any adverse action taken against either Olson or Kuchta regarding their behavior.  (*Id.* ¶¶ 48, 51.)

In addition, the complaint alleges a litany of other discriminatory incidents which Plaintiff claims were based on her minority statues.  These include:

failing to discipline a caucasian female who cursed Plaintiff in front of facility residents (*id.* ¶ 23); fostering an environment that created hostility and allowed "discriminatory, harassing and disrespectful behavior and speech towards Plaintiff by other employees" (*id.* ¶ 24); in mid-2006, an employee of Defendant suggested that Plaintiff leave her position, something that was not suggested to non-minority employees (*id.* ¶ 26); discriminatory behavior, including miscalculating pay, which was in retaliation for Plaintiff's September 1, 2004 complaint (*id.* ¶¶ 39, 40, 41); requiring Plaintiff to provide a doctor's note when she called in sick (*id.* ¶ 52); forcing Plaintiff to take involuntary medical leave under the FMLA, subjecting her to termination (*id.* ¶ 56); and, requiring Plaintiff to make timely payments towards her health, life and disability insurance twice a month (*id.* ¶ 57).

On June 12, 2009, Plaintiff's employment was terminated without notice. (*Id.* ¶ 61.)

## B.   **Procedural History**

Plaintiff filed her initial complaint on December 29, 2009. (Doc. 1.) A summons was issued on December 30, 2009, and the court issued an order outlining case assignment and procedures on January 8, 2010 (doc. 2). No further action was taken until July 15, 2010, when the court issued an order giving Plaintiff until July 26, 2010, to show cause why the case should not be dismissed for failure to prosecute. (Doc. 3.) Having received no response, this case was dismissed on July 30, 2010. (Doc. 4.)

On September 20, 2010, Plaintiff filed a motion to reopen the case. (Doc. 6.) On October 4, 2010, the court granted the motion to reopen the case and

allowed Plaintiff to proceed in this matter *pro se*.  (Doc. 7.)  Summons were again issued.

On February 22, 2011, and February 24, 2011, Defendant filed a motion to dismiss and brief in support respectively.  (Docs. 10 & 11.)  Without requesting leave of court, Plaintiff filed an amended complaint on February 28, 2011.  (Doc. 12.)  Defendant filed a second motion to dismiss on March 8, 2011.  (Doc. 15.)  On March 9, 2011, the court deemed the first motion, (doc. 10), moot.  (Doc. 16.)  On March 15, 2011, Defendant filed a brief in support of its second motion to dismiss. (Doc. 17.)

On March 24, 2011, counsel entered an appearance on behalf of Plaintiff.  (Doc. 19.)  In light of this fact, on March 28, 2011, the court issued an order allowing Plaintiff to file a second amended complaint, if desired.  (Doc. 21.)

On April 18, 2011, Plaintiff filed a second amended complaint.  (Doc. 22.)  On May 6, 2011, Defendant filed a motion to dismiss Plaintiff's second amended complaint, (doc. 23), followed by a brief in support on May 20, 2011. (Doc. 24.)  After multiple extensions of time, Plaintiff filed a brief in opposition on July 14, 2011.  (Doc. 31.)  Defendant filed a reply brief on August 1, 2011.  (Doc. 34.)  Therefore, the motion is now ripe for disposition.

## II.        Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S. ___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted).  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v.*

*Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.        Discussion

Plaintiff argues that the above actions of Defendant constitute violations of  Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Age Discrimination in Employment Act, *as amended*, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"); and the Pennsylvania Human Relations Act, 42 Pa.C.S.A § 951 *et seq.* ("PHRA").  In addition, Plaintiff claims that all of these claims were filed within the relevant statutorily required timeline.

Defendant counters that Plaintiff has failed to meet the statutory prerequisites for her claims because she has either failed to exhaust her administrative remedies or failed to timely file her claims.

## A.    <u>Administrative Filings</u>[5]

Before bringing a Title VII claim in federal court, a plaintiff must first file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009). "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)) (internal citations omitted). An aggrieved party is not allowed "to bypass the administrative process" by taking the fast-lane into federal court without first filing an action with the EEOC. *Id.* at 263.

If an administrative complaint is initially filed with the PHRC, then it must be done within 180 of the alleged discriminatory conduct, and a court action must be commenced within two years after the complainant receives notice that the

---

[5]    Plaintiff does not attach her administrative filings to her second amended complaint and relies on them in so far as saying "Plaintiff dual filed a timely charge of sex, race and handicap disability discrimination with the Pennsylvania Human Relations Commission which was dual filed with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of her Notice of Rights to Sue on March 25, 2011." (Compl. 65.) Defendant has filed as an Appendix to its motion to dismiss the amended complaint Plaintiff's filings with the Pennsylvania Human Relations Commission ("PHRC") and the EEOC. (Doc. 18.) Defendant did not re-file these along with its motion to dismiss the second amended complaint, however, both parties refer to the filings in their briefings and the dates are not in dispute. As such, the court does not feel it is necessary to convert the motion to dismiss into one for summary judgment because the both parties rely on the documents, they are not in dispute, and because timely administrative filings are a statutory prerequisite to seeking relief in a district court. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997).

10

complaint has been closed at the administrative level.  43 Pa.C.S.A. §§ 959 (h) &
962 (c)(2); *see Burgh v. Borough Council of Borough of Montrose*, 261 F.3d 465,
475 (3d Cir. 2001).  However, if a complaint is originally filed with the EEOC or
dual-filed between the agencies, a complainant has 300 days from the date of the
alleged discriminatory conduct within which to file her complaint.  *See*  42 U.S.C.A.
§ 2000e-5 (e)(1).

        Plaintiff filed a Performance-Related Discipline Questionnaire (doc. 18
at 2 of 45) and a Harassment Questionnaire (doc. 18 at 10 of 45) on May 24, 2007
with the PHRC.  On these documents she checked religious creed, retaliation and
non-job related handicap/disability as the bases for her claims.  There is no indication
that these documents were dual filed with the EEOC.  Subsequently, Plaintiff filed an
amended complaint with the PHRC, which was dual filed with the EEOC on October
17, 2008.  (Doc. 18 at 16 of 45.)  In this complaint, she brought claims of
harassment, race discrimination, and disability discrimination.  (*Id.*)  Plaintiff filed a
second amended complaint on August 31, 2009.  (Doc. 18.)  In this complaint she
brought claims of harassment, race discrimination, disability discrimination, age
discrimination, and retaliation based on her disability.  (*Id.* at 30 of 45),

        Thus, for Plaintiff's federal race and disability discrimination claims to
be timely, the alleged discriminatory conduct would have to have occurred on or
after December 21, 2007, this being 300 days before October 17, 2008.  Likewise, to
be timely, any alleged  age discrimination would have to have occurred on or after
November 4, 2008, this being 300 days after before August 31, 2009.  Based on the
facts alleged in the second amended complaint, all of Plaintiff's claims are untimely
because the last violation listed in Plaintiff's second amended complaint occurred on

November 27, 2006, well outside the 300 day window.  Although Plaintiff alleges she was terminated on June 12, 2009, there are no facts related to this termination in the second amended complaint and the temporal relation with the last known act of alleged discrimination on November 27, 2006, is simply too attenuated for this court to infer that the termination was based on Plaintiff's 2007 medical incident.

The factual recitations in the parties' briefs contain facts that Plaintiff alleged in her previous complaints with the PHRC, as opposed to facts that are alleged in the second amended complaint presently before this court.  Although the court is willing to consider undisputed documents outside the pleadings for the limited purpose of establishing undisputed facts regarding exactly when Plaintiff made her administrative filings, the court will not allow Plaintiff to otherwise bypass the requirements of the Federal Rules of Civil Procedure for what a complaint must allege.[6]  By not raising claims in Plaintiff's complaint before this court, she has essentially forfeited those claims.  As such, based on the facts alleged in Plaintiff's second amended complaint, Plaintiff's claims are time-barred and will be dismissed.

As stated above, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.,*

---

[6]     Defendant, in its brief in support, relies on facts outlines in Plaintiff's administrative filing and references this court's ability to convert a motion to dismiss in to one for summary judgment. The court willing to make such a conversion under certain limited circumstances.  However, in the instant case, doing so would allow Plaintiff to completely subvert the complaint process by not even alluding to facts which occurred after 2006.  Instead, it would appear Plaintiff wishes that either Defendant, or this court, sift through her many administrative filings and attempt to vet out potential claims.  This is not the burden of Defendant, or the role of this court.  The court will decide a motion to dismiss based on facts alleged *in the complaint*, not based on outside documents filed with other courts or agencies.  Federal Rule of Civil Procedure 8 (a)(2) is not a high standard for Plaintiff to comply with, however, not only does it require more than "threadbare allegations of a cause of action" it also requires *some* reference to the facts underlying these allegations.  The complaint in this case alleges no discriminatory act after 2006.

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

In the instant case, the court believes leave to amend would be futile. Plaintiff is represented by counsel and has been given *three chances* to file a proper complaint with this court.  Having failed to provide the court with "a short and plain statement of the claim showing that the pleader is entitled to relief" on each occasion, the court finds allowing Plaintiff to once again amend her complaint would be futile. As such, the complaint will be dismissed.

## III.        Conclusion

For the reasons stated above, the court finds that Plaintiff's claims are time barred and the complaint will be dismissed.  An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                        United States District Judge
Dated:  February 7, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLORIA J. THOMPSON,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Civ. No. 1:09-CV-2558** |
| | : | |
| **KEYSTONE HUMAN SERVICES CORPORATION,** | : | **(Sylvia H. Rambo)** |
| | : | |
| **Defendant** | : | |
| | : | |

## O R D E R

For the reasons set forth in the accompanying memorandum of law, **IT IS HEREBY ORDERED** that Plaintiff's claims in her second amended complaint (doc. 22) are time barred.  As such, the Defendant's motion to dismiss (doc. 23) is **GRANTED**, and clerk of court is **DIRECTED** to **CLOSE** this case.  In addition, the court finds leave to amend would be futile.

                        s/Sylvia H. Rambo
                        United States District Judge

Dated:  February 7, 2012.